Richard McINTYRE and Irene McIntyre, Plaintiffs,

v.

TICOR TITLE INSURANCE COMPANY, as successor by merger to Alaska Title Guaranty Company, Defendant and Third-Party Plaintiff,

v.

SMALL BUSINESS ADMINISTRATION, Third-Party Defendant.

No. F85–015 Civil.

United States District Court, D. Alaska.

Sept. 3, 1986.

Joseph W. Sheehan, Fairbanks, Alaska, for plaintiffs.

Michael W. Price (Groh, Eggers, Price), Anchorage, Alaska, for Ticor.

James DeWitt, Fairbanks, Alaska, for SBA.

## ORDER

(Rulings on Motions for
Summary Judgment)

HOLLAND, District Judge.

The Court has before it three motions for summary judgment. In order of their filing:

Third-Party Defendant, the Small Business Administration (herein "SBA"), has moved for a summary determination that the lien of a deed of trust held by Plaintiffs had expired as a matter of law. The motion is opposed by Plaintiffs. Plaintiffs have moved for summary judgment in their favor as regards the validity of their deed of trust lien. Defendant/Third-Party Plaintiff Ticor Title Insurance Company, successor by merger to Alaska Title Guaranty Company, (herein "Ticor") opposes Plaintiffs' motion for summary judgment and in turn seeks summary judgment over against the SBA. To complete the circle, the SBA opposes Ticor's motion for summary judgment.

The Court has heard and considered the oral arguments of the parties.

*Statement of Facts*

The facts which are material to this litigation do not appear to be disputed in any respect pertinent to a disposition of the three motions for summary judgment now before the Court. The facts are as follows:

1. The property which is the subject of this litigation is described as:

   Lots Ten (10) and Eleven (11), Block Three (3), Graehl Subdivision, Fairbanks Meridian, Fairbanks, Alaska.

2. On November 18, 1967, Robert A. and Mary K. Davenny, as trustors, executed a deed of trust in favor of Alaska Title Guaranty Company, trustee, for the benefit of the Small Business Administration. The deed of trust was given for the purpose of securing payment of indebtedness in the amount of $118,000.00. The deed of trust was recorded November 28,

1967. (This deed of trust is herein sometimes referred to as "the first deed of trust".)

3. On April 14, 1969, Plaintiffs purchased the subject property and assumed the first deed of trust. On September 1, 1974, Plaintiffs deeded the subject property to their son and daughter-in-law, Edward R. and Cathy McIntyre. The Edward McIntyres also assumed the deed of trust first above described in favor of the SBA.

4. In conjunction with their purchase of the subject property, the Edward McIntyres, as trustors, executed a deed of trust in favor of Alaska Title Guaranty Company, trustee, for the benefit of Plaintiffs. The deed of trust was given for the purpose of securing payment of indebtedness in the amount of $189,216.94. This deed of trust recites that it was "made this 1st day of September, 1974." This deed of trust was not acknowledged before a notary public until the 26th day of February, 1975, and was recorded on April 8, 1975. (This deed of trust is herein sometimes referred to as "the second deed of trust".)

5. The Edward McIntyres subsequently sold the property (which appears to have been part of an ongoing business known as "Frontier Supply Co., Inc.") to James R. Thompson, Carol M. Thompson, and Gunther E. Matschke. As part of the purchase price, Thompson et al. as trustors executed three deeds of trust to Fairbanks Title Agency, Inc., as trustee, for the benefit of Edward R. McIntyre, for the purpose of securing the payment of indebtedness in the principal amounts of $111,226.00, $151,-774.00, and $208,478.00. These three deeds of trust were recorded on August 23, 1978.

6. Subsequently, Frontier Supply Co., Inc., separately or jointly with Thompson et al., obtained additional financing from the Alaska National Bank of the North and, as security therefor, executed further deeds of trust to Fairbanks Title Agency, Inc., trustee, for the benefit of Alaska National Bank of the North. Edward McIntyre agreed to subordinate his security interest in the subject property to that of Alaska National Bank of the North and the SBA. The subordination agreement was recorded on December 18, 1979. The bank's security interest was subsequently assigned (on February 8, 1984) to the SBA.

7. The Thompsons et al. ceased making payments to the SBA on the first deed of trust and the SBA issued a notice of default on that deed of trust on June 5, 1984. No default notice was given on the Alaska National Bank of the North deeds of trust which the SBA came to hold also.

8. The SBA beneficiary's affidavit in support of the notice of default avers that, as of May 31, 1984, there was then due and owing on the first deed of trust principal in the amount of $73,435.54 plus accrued interest of $2,364.87.

9. A non-judicial foreclosure sale was conducted on September 19, 1984, by employees of the SBA acting as agent for Ticor (successor in interest to Alaska Title Guaranty Company) as trustee. Bidding for the property opened at $100,000.00 and was ultimately raised to $130,000.00 by various third-party bidders. At this point, the SBA entered a "protective bid at $399,-950." The SBA was declared the successful bidder.

10. In anticipation of this sale, Ticor's subsidiary, Alaska Title Guaranty Agency, Inc., issued a litigation report which, among other things, disclosed all of the foregoing transactions relative to liens upon the subject property.

11. On October 29, 1984, Ticor issued a trustee's deed for the subject property in favor of the SBA, reciting consideration for the deed to be "Ten Dollars ($10.00)". Ticor delivered this deed to the SBA without receiving from the SBA the sale proceeds in excess of the amount due on the first deed of trust which foreclosed.

12. As of the date of the foreclosure sale, there remained due and owing to Plaintiffs from the Edward McIntyres the sum of $49,975.13, which sum was secured by the second deed of trust above described.

13. The second deed of trust was never subordinated to the lien of any deed of trust held by the SBA on the subject property. SBA could have required such subor-

dination as a condition of acquiring the two Thompson *et al.*/Alaska National Bank of the North deeds of trust, but did not do so because of the fact that a title report procured at the time those deeds of trust were acquired by the SBA failed to disclose the existence of the second deed of trust.

14. Immediately after the sale, on September 21, 1984, Counsel for Plaintiffs requested that the SBA prepare appropriate releases which counsel proposed to have signed by Plaintiffs and which he further proposed to exchange for payment of the sum remaining due on the second deed of trust. Plaintiffs have not been paid the sum remaining due them, and this suit was commenced against Ticor for failure to collect the sums necessary to pay Plaintiffs in connection with the foreclosure proceedings.

15. Ticor brought the SBA into the case, which was then removed to this court by the SBA.

*Viability of the Second Deed of Trust*

The focal point and principal issue raised in the SBA motion for summary judgment as well as Plaintiffs' motion for summary judgment is the validity of the September 1, 1974,[1] second deed of trust from the Edward McIntyres to Plaintiffs. It is the SBA's contention that the lien of the second deed of trust lapsed on September 1, 1984, ten years subsequent to the transaction out of which the deed of trust arose. This contention is based upon the SBA's interpretation of AS 34.20.140 and AS 34.-20.150(a).

Reduced to the terms which are essential to understanding the dispute between the SBA and Plaintiffs, AS 34.20.140 provides that when a note is secured by an instrument creating a lien upon real estate, payment upon the note does not extend the lien beyond its original period as against subsequent lien holders unless a memorandum of payment, acknowledged by the owner of the note, is recorded before the end of the statutory time for bringing an action upon the note. AS 34.20.150 provides that the maturity date of an instrument creating a lien upon real property, which does not by its terms include a maturity date, is ten years from the date of the instrument unless a memorandum of payment is recorded.

In this case the second deed of trust contained no maturity date. No instrument designating a maturity date was ever recorded, nor was a memorandum of payment recorded at any time. The SBA contends that the lien of Plaintiffs' second deed of trust lapsed pursuant to the foregoing provisions on September 1, 1984, ten years after the transaction which gave rise to the second deed of trust. Plaintiffs, on the other hand, contend that Section 150(a) merely specifies the date upon which as a matter of law the second deed of trust is considered to be due and owing for purposes of AS 34.20.140 which, as above-described, specifies a procedure for extending the duration of a lien which secures a note.

The Court concludes that Plaintiffs' construction of AS 34.20.140 and AS 34.20.-150(a) is correct.

The substance of what is now AS 34.20.-140 was originally enacted by the territorial legislature of Alaska in 1925. Sec. 1, Ch. 19, Alaska Sess. Laws (1925).[2] This

---

1. There is a disagreement between the parties as regards the effective date of the second deed of trust. In light of what is said hereinafter, the Court need not reach the question of whether the second deed of trust was operative on September 1, 1974, or whether it did not become operative until February 26, 1975, when it was acknowledged.

2. The pertinent portion of chapter 19 reads:
   Section 1. That where the payment of any existing contract, whether it be a bill of exchange, promissory note, bond or other evidence of indebtedness, is secured by any instrument creating a lien upon real estate, no pay-

ment upon such existing contract shall operate to extend the lien of the instrument beyond its original or extended period as against subsequent purchasers, optionees, mortgagees, creditors, or persons acquiring a lien upon real estate, unless prior to the expiration of the statutory time for the bringing of an action upon such existing contract and extensions as exhibited by the terms of the recorded instruments, a memorandum of such payment, signed and acknowledged by the owner of the existing contract, or someone for him, be recorded in the office of the recording district wherein said real estate is situated.

law was codified as section 2860, Compiled Laws of Alaska (1933), and was recodified subsequently as section 22–3–46, Alaska Compiled Laws Annotated (1949). In 1955, the Alaska territorial legislature reenacted section 22–3–46 and amended it with the language which in substance appears today as AS 34.20.150. Sec. 1, Ch. 105, Alaska Sess. Laws (1955).[3]

In recodifying the laws of the State of Alaska in 1962, section 22–3–46, Alaska Compiled Laws Annotated (1949), as amended by section 1, chapter 105, Alaska Session Laws (1955), was restructured by the reviser so as to read as follows:

Sec. 34.20.140. *Recording memorandum extending lien.* Where the payment of an existing contract (a bill of exchange, promissory note, bond, or other evidence of indebtedness) is secured by an instrument creating a lien upon real estate, payment on the contract does not extend the lien beyond its original or extended period as against subsequent purchasers, optionees, mortgagees, creditors, or persons acquiring a lien upon the real estate, unless

(1) a memorandum of the payment is recorded in the office of the recording district where the property is located;

(2) the memorandum is recorded before the end of the statutory time for bringing an action upon the existing contract and extensions as exhibited by the terms of the recorded instrument; and

(3) the memorandum is signed and acknowledged by the owner or the representative of the owner of the existing contract of indebtedness.

Sec. 34.20.150. *Maturity of lien.* (a) The date of maturity of an instrument creating a lien upon real property is considered to be 10 years from the date of the instrument. . . .

The foregoing legislative history of AS 34.20.140 and AS 34.20.150(a) indicates that we are in reality dealing with one legislative enactment, not two. Section 150(a) is in reality an amendment which was attached to section 140 by the Alaska territorial legislature in 1955. As previously stated, the thrust of what is now section 140 is that payment upon a note secured by "any instrument creating a lien upon real estate" does not operate to extend the lien of the security instrument beyond its "original ... period" as to third parties unless, prior to the expiration of the statutory time for bringing an action upon the note, an appropriate recording is made. Compare Sec. 1, Ch. 19, Alaska Sess. Laws (1949) to AS 34.20.140.

Pertinent to the case now before the Court, the foregoing makes a clear distinction between the "period" of the lien and the "statutory time for bringing an action" on the note. The original terminology and format of what is now section 150 provided that if the "period" of the lien-creating instrument is not disclosed in the instrument, "the date of maturity of such instrument is ten years from the date thereof" unless a recording is made. Compare Sec. 1, Ch. 105, Alaska Sess. Laws (1955) to AS

---

3. Chapter 105 reads:

Section 1. That Section 22–3–46 ACLA 1949 be amended to read as follows:

Sec. 22–3–46. Payments on Contract Not to Extend Lien Unless Memorandum Recorded: Date of Maturity. Where the payment of any existing contract, whether it be a bill of exchange, promissory note, bond or other evidence of indebtedness, is secured by any instrument creating a lien upon real estate, no payment upon such existing contract shall operate to extend the lien of the instrument beyond its original or extended period as against subsequent purchasers, optionees, mortgagees, creditors, or persons acquiring a lien upon real estate, unless prior to the expiration of the statutory time for the bringing of an action upon such existing contract and extensions as exhibited by the terms of the recorded instruments, a memorandum of such payment, signed and acknowledged by the owner of the existing contract, or someone for him, be recorded in the office of the recording district wherein said real estate is situated. Unless the period of such instrument creating a lien upon real estate heretofore or hereafter given is disclosed by the terms thereof, it shall be deemed that the date of maturity of such instrument is ten years from the date thereof, unless an instrument extending the period of the same or a memorandum of payment thereof has been recorded.

The foregoing also appeared in a supplement to the 1949 code as section 22–3–46, Alaska Compiled Laws Annotated (1957).

34.20.150. It is significant that the territorial legislature used the term "maturity". This term has a very long-standing, consistent meaning: "[t]he date at which an obligation, such as the principal of a bond or a note, becomes due." *Black's Law Dictionary* 883 (5th ed. 1979). The maturity date of a note marks the beginning of the time when, absent some other earlier default, it becomes actionable. *Government of the Virgin Islands v. Brown*, 221 F.2d 402, 405 (3d Cir.1955).

■ If prior to 1955 there were doubt as to the meaning of the work "period", that doubt is removed by the 1955 amendment which unequivocally equates "period" to the payment term of a note ending at a maturity date for the note. "Period" in these statutes does not refer to the time after which suit on a note is barred. Reduced to their simplest form pertinent to this dispute, the statutes in question provide that a security instrument without a specified period or term has a maturity date of ten years and that it may be extended only by a recording made prior to the running of the statute of limitations on the note which is secured by the lien-creating instrument. Significantly the territorial legislature, in enacting what became section 150(a), did not employ language denoting or connoting the termination of lien rights. The territorial legislature did not in substance say that the lien shall be deemed to have expired ten years from the date of the instrument. Rather, section 150(a) provides that, absent some earlier default, an instrument without a maturity date creating a lien becomes actionable—that is fully due and owing (matured) ten years from date.

Returning again to AS 34.20.140, we are clearly told that a recording "before the end of the statutory time for bringing an action upon the existing contract" (here a promissory note) will serve to extend the lien securing such note beyond its original period. In Alaska, the statute of limitations upon promissory notes is six years. AS 09.10.050. *Dworkin v. First National Bank of Fairbanks*, 444 P.2d 777, 782 (Alaska 1968).

■ Applying the foregoing to the instant case, it is undisputed that Plaintiffs' second deed of trust contained no stated period, term, or maturity date. Thus, by virtue of AS 34.20.150, the maturity date of Plaintiffs' second deed of trust was ten years from its date or September 1, 1984. On this date the six-year statute of limitations for enforcement of the note and deed of trust would begin; and that limitation period would end on September 1, 1990, unless extended by a recording in accordance with AS 34.20.140.

The foreclosure sale here in question took place on September 19, 1984. While it is abundantly clear that Plaintiffs' second deed of trust was matured and actionable on that date, it had not lapsed or terminated. On September 19, 1984, Plaintiffs had a valid lien on the property which is the subject of this action.

Plaintiffs have moved for summary judgment on their claim against Ticor for the amount due on their second deed of trust. Plaintiffs' motion is granted.

■ Although this case is in federal court for reasons other than diversity of citizenship, Alaska law still has application to all of the parties. 19 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedures, Jurisdiction* § 4515 at 275 (1982).

Plaintiffs' deed of trust has priority relative to other like encumbrances upon the subject property based upon the time of its filing. *See* AS 34.20.130(b) and AS 34.15.-260(a)(3). The SBA's deed of trust which was foreclosed had first priority on the property which is the subject of this action. Plaintiffs' deed of trust had second priority. The Frontier Supply Co., Inc., to Alaska National Bank of the North deeds of trust, which came to be held by the SBA, had third and fourth priority on the subject property because of the subordination of the intervening deeds of trust.

Under Alaska law, the SBA's deed of trust may be foreclosed through use of a power of sale vested in the trustee, here Ticor, in the event of a default in the terms of the deed of trust. AS 34.20.070(a). This

statute specifically provides that the trustee "may execute his trust by sale of the property, upon the conditions and in the manner set forth in the deed of trust". The SBA deed of trust provided in pertinent part that a foreclosure sale would be "at public auction to the highest and best bidder for cash in lawful money of the United States, payable at the time of sale." Plaintiff's memorandum in support of motion for summary judgment, Ex. A, ¶ B.6. The SBA's deed of trust further provided:

> Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof ... all other sums then secured hereby; *and the remainder, if any, to the person or persons legally entitled thereto.*

*Id;* emphasis supplied.

As detailed in the statement of facts herein, the SBA bid $399,950.00[4] at the foreclosure sale. Its debt on the first deed of trust at the time of sale was $73,435.54 plus interest ($2,364.87 as of May 31, 1984). Thus there was clearly an excess bid or, in the language of the deed of trust, a "remainder" sum which, as a matter of law, should have been available to junior encumbrance holders such as Plaintiffs. Ticor failed, however, to collect from the SBA funds sufficient to satisfy Plaintiffs' second deed of trust—even though the bid was for more than the amount due and owing on both the foreclosed deed of trust and Plaintiffs' second deed of trust which was extinguished or cut off by the foreclosure proceedings. AS 34.20.090(a); *Burnett, Waldock & Padgett Investments v. C.B.S. Realty,* 668 P.2d 819, 822–23 (Alaska 1983).[5]

Incredibly, Ticor's Fairbanks manager and company vice-president testified on deposition that he was not required to collect the sum bid in excess of the amount necessary to satisfy the SBA's deed of trust which was being foreclosed. He further testified that it was the obligation of the SBA's attorney to see to disposition of the excess sale proceeds. Plaintiffs' memorandum in support of motion for summary judgment, Ex. S at 24–27.

■ Ticor, as trustee under the SBA deed of trust, owed a fiduciary duty to the SBA as beneficiary and also to other parties having interests in the property or the proceeds derived from a sale of the property. *See McHugh v. Church,* 583 P.2d 210, 214, 218 (Alaska 1978). Moreover, Ticor (as successor in interest to Alaska Title Guaranty Company) is the trustee named in the Plaintiffs' second deed of trust. As a consequence, Ticor also had a direct fiduciary obligation to Plaintiffs under the second deed of trust. In failing to collect the excess bid proceeds from the SBA, Ticor breached the express foreclosure terms of the first deed of trust and breached its fiduciary obligations to Plaintiffs as junior lienholders under the first deed of trust and as beneficiaries under the second deed of trust.

It is undisputed that the sale proceeds were far more than enough to satisfy Plaintiffs' second deed of trust entirely. Accordingly, Plaintiffs are entitled to judgment against Ticor for all sums due and owing under the terms of the second deed of trust.[6]

---

**4.** Ticor's deed to the SBA as a result of the foreclosure of the subject property recited the sale consideration to be "Ten Dollars". Plaintiffs' memorandum in support of motion for summary judgment, Ex. O. It is clear and not disputed by anyone that this recitation in Ticor's deed is wrong. Ticor failed to comply with AS 34.20.080(c) when it neglected to state the true consideration paid for the property in its trustee's deed.

**5.** The SBA's report of sale indicates that it made a "protective bid" at $399,950.00. Plaintiffs' memorandum in support of motion for summary judgment, Ex. M. The Court rejects the idea that the SBA's "protective bid" was anything

other than the highest "cash" bid contemplated by the deed of trust being foreclosed. On the basis of its bid, the SBA took title to the subject property free of the second deed of trust.

**6.** As set out at the foot of this order, it is the Court's intention that Plaintiffs prepare an appropriate form of judgment based upon this order. The amount of principal owed Plaintiffs is undisputed. It appears that there may be some controversy over the rate of interest. In this regard, Plaintiffs' note has not been made available to the Court. The Court is not presently persuaded that Plaintiffs are entitled to a statutory rate of interest since it is the Court's supposition that Plaintiffs' note provides for a

Finally, we turn to Ticor's motion for summary judgment against the SBA. Ticor seeks such relief on theories of constructive trust and indemnity.

The Court does not find Ticor's implied indemnity theory workable on the facts of this case. The test for implied indemnity is set forth in *Providence Washington Insurance Co. v. DeHavilland Aircraft Company of Canada*, 699 P.2d 355 (Alaska 1985).

[Alaska law permits] an implied indemnity claim when (1) the claimant discharged a legal obligation to a third party, (2) the defendant is also liable to the third person and (3) as between the claimant and defendant, the obligation should be discharged by the latter.

*Id.* at 357. A claimant for indemnity must also show "the existence of a contract or other duty between indemnitor and indemnitee." *Id.*

The effect of this decision is to require Ticor to discharge a legal obligation to a third party (Plaintiffs here); and there are at least two levels of contractual relationship between Ticor and the SBA: Trustee-Beneficiary under the first deed of trust, and principal-agent in the processing of the foreclosure sale. However, the Court concludes that the SBA has no direct liability to Plaintiffs.

Ticor's constructive trust theory is viable. It is undisputed that the SBA acted as Ticor's agent in conducting the subject sale. As both agent and bidder at the sale, the SBA bid the property in at a price far in excess of the sum necessary to satisfy the deed of trust then in foreclosure as well as Plaintiffs' second deed of trust. The SBA's representatives were, at the time of the sale, well aware of the existence of Plaintiffs' second deed of trust. The SBA had procured a litigation report from Ticor disclosing the second deed of

trust. Plaintiffs' memorandum in support of motion for summary judgment, Ex. N, item 5. The SBA is charged with knowledge of the terms of its deed of trust which provided for the payment of sale proceeds in excess of the SBA claims "to the person or persons legally entitled thereto." Furthermore, the SBA's representative has also testified that: "when the question is cleared as far as the position of that deed [the Plaintiffs' deed of trust], if there is no question in my mind that that position is, you know, a valid position, then I don't see why we wouldn't pay." *Id.* at 67. Thus—and the SBA's legal position on the validity of Plaintiffs' deed of trust to the contrary notwithstanding—the SBA representatives appear not to contest the SBA's obligation to make funds available from their bid to pay Plaintiffs' second deed of trust if it were in force at the date of foreclosure.

The Court has hereinabove held the second deed of trust to be valid and viable. The SBA bid far in excess of the amount necessary to satisfy its first deed of trust at the foreclosure sale. The SBA's employee, as agent for Ticor, accepted this bid and reported it to Ticor, which in turn prepared a trustee's deed which was accepted by the SBA. No effort has been made by the SBA to withdraw the subject bid or to set aside the foreclosure sale. Having bid sufficient funds to satisfy both its first and Plaintiffs' second deed of trust, and having accepted a trustee's deed on the basis of that bid, the SBA may not now—whether on a theory of constructive trust or estoppel—deny its prior conduct and refuse Ticor the funds necessary to satisfy Plaintiffs' deed of trust.[7]

The SBA makes a number of arguments, the general tenor of which is that Ticor should bear the loss of paying Plaintiffs' second deed of trust if it is valid because Ticor improperly (it is alleged) delegated its

specified rate of interest on the sums due thereunder, "until paid". Plaintiffs shall document, with their note or otherwise, the rate of interest and interest computation set out in the form judgment which is to be submitted. To the extent that Plaintiffs may claim sums other than principal and interest, the Court intends that these items be taken up in supplemental pro-

ceedings for the taxing of costs and attorney's fees by the Clerk and/or the Court itself.

7. Especially since the SBA has had the use of the funds in question during this litigation, it is liable to Ticor for the full principal and interest necessary to satisfy Plaintiffs' second deed of trust. The judgment which Plaintiff is to prepare shall so provide.

duties as trustee. The short answer to these contentions is that if there were any improper delegation by Ticor, and the Court does not so hold, that delegation was to the SBA itself—the beneficiary of Ticor's fiduciary duty.

The SBA has not shown that it is harmed in any respect by Ticor's conduct. Quite the contrary, the SBA was clearly a willing participant in Ticor's handling of the foreclosure of the SBA's first deed of trust. The SBA, rather than being harmed, now seeks to obtain a windfall for itself by reaping the benefits of the foreclosure sale and avoiding, if possible, the burdens of its bid whereby the subject property was acquired by the SBA. Plainly the SBA is unjustly enriched if it is permitted to avoid the consequences of its willing participation in the foreclosure sale procedures which it now questions.

Moreover, it appears that a reporting error—committed not by any party to this action, but by another title company which overlooked the existence of Plaintiffs' second deed of trust to Alaska National Bank of the North in conjunction with transfer of the third and fourth deeds of trust to the SBA—in reality gave rise to this litigation. But for this alleged reporting error, the SBA either would not have acquired the third and fourth deeds of trust or it would have obtained them along with a subordination of the second deed of trust just as was done with other intervening deeds of trust which, although prior in time and recording to the third and fourth deeds of trust, were by express agreement subordinated to the latter. Had the SBA not acquired the third and fourth deeds of trust, its interest in bidding at the foreclosure sale would have terminated when the bidding reached the amount due on the first deed of trust. Had the SBA procured a subordination of the second deed of trust, Plaintiffs would have no claim here.

Thus, in a very real sense, an entity which is not a party to this litigation appears to have occasioned everything that has happened here; and presumably the SBA and/or Alaska National Bank of the North have recourse against such non-par-

ty. Why the SBA chose to precipitate this litigation rather than pursuing the party that apparently failed to report the existence of the second deed of trust is a mystery to this Court.

In summary, the SBA's motion for summary judgment is denied. Plaintiffs' motion for summary judgment is granted. Ticor's motion for summary judgment is granted. Plaintiffs shall prepare an appropriate judgment with provision for later inclusion of costs and attorney's fees for prevailing parties.