UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2440

EVELYN COTTO AND EDWIN TORRES, ETC., ET AL.,

Plaintiffs, Appellants,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., U.S. District Judge]

Before

Selya, Circuit Judge,

Feinberg,* Senior Circuit Judge,

and Stahl, Circuit Judge.

Peter John Porrata for appellants.

Fidel A. Sevillano del Rio, Assistant United States

Attorney, with whom Daniel F. Lopez Romo, United States Attorney,

was on brief, for appellee.

*Of the Second Circuit, sitting by designation.

SELYA, Circuit Judge. This appeal arises out of an
SELYA, Circuit Judge.

action brought against the United States by family members and

personal representatives of an injured minor under the Federal

Tort Claims Act (FTCA), 28 U.S.C. 1346(b), 2671-2680 (1990).

Long after the district court dismissed the case, plaintiffs

sought to revivify it but failed. Believing, as we do, that the

district court appropriately rebuffed the attempted resurrection,

we affirm the judgment below.

I. BACKGROUND

The incident that sparked this case occurred on

December 13, 1987, when a small child, Alexis Agosto, caught his

hand in a conveyer belt operated by an employee of the United

States Department of Agriculture (DOA). On February 24, 1989,

Agosto's parents and grandparents filed FTCA claims on Agosto's

and their own behalf. On April 21, DOA responded, requesting

medical records, itemized bills, and other details. Plaintiffs

retained counsel. On November 29, 1989, their attorney notified

DOA that he would supply pictures of Agosto's injured hand,

apparently believing that the photographs would satisfy DOA's

curiosity anent the extent of injury. He was wrong. DOA,

unmollified, wrote to the lawyer on March 5, 1990, reiterating

its need for the information previously requested and mentioning

that plaintiffs' claim forms were incomplete. The letter also

stated:

Please bear in mind that the claims must be
substantiated and that we must have the
information requested before a determination
can be made by [the appropriate official].

2

No

further action will be taken on these claims

until the information requested has been

received (emphasis in original).

Instead of submitting further particulars, plaintiffs brought

suit. They alleged, inter alia, that "[n]o affirmative action as

to any settlement or responsibility has been taken by [DOA],

although a copy of the medical record has been provided to them

[sic]." This allegation was seemingly an endeavor to show that,

despite the lack of an explicit denial, DOA had implicitly denied

plaintiffs' claim, thus satisfying the FTCA's exhaustion

requirement. See 28 U.S.C. 2675(a).

The government answered the complaint, asserting inter

alia that plaintiffs had yet to file a substantiated, completed

administrative claim, and, therefore, had not exhausted their

administrative remedy. On August 27, 1990, a magistrate judge

stayed proceedings for ninety days to allow plaintiffs a final

opportunity "to provide defendant's claim specialist with the

necessary documentation so that defendant may either accept or

reject the claim." The stay proved unproductive. On November

28, 1990, the magistrate convened the next scheduled conference,

noted plaintiffs' counsel's absence, and reported to the district

judge that "the government will shortly move to dismiss the

complaint for failure to exhaust administrative remedy." Even

so, some settlement negotiations continued.

To make a tedious tale tolerably terse, the government,

prodded by the district judge, moved for dismissal on May 15,

3

1991. The motion papers averred that plaintiffs had failed to

prosecute their claims diligently at either the administrative or

judicial levels. Among other things, the government proffered

the affidavit of a local DOA staffer attesting to plaintiffs'

failure to perfect their administrative claims. Without waiting

for plaintiffs' objection, the district court dismissed the case

with prejudice under Fed. R. Civ. P. 41(b). Judgment entered on

May 28, 1991.1

At that point, plaintiffs and their lawyer,

figuratively speaking, played the ostrich, burying their heads in

the sand and ignoring the adverse judgment. They did not ask

that the dismissal be vacated so that their opposition, see supra

note 1, might be more fully considered; they did not move for

reconsideration of the order; they did not take an appeal; they

did not seasonably seek post-judgment relief. Withal, plaintiffs

suggest that they continued to pursue negotiations, eventually

reaching what plaintiffs' counsel describes as a tentative

agreement (ironically, with the same DOA representative who had

executed the aforementioned affidavit) for a $60,000 settlement.

They concede, however, that the United States Attorney's office

declined to approve any settlement, presumably because the

lawsuit had been dismissed with prejudice.2 They also concede

1Plaintiffs filed an opposition to the dismissal motion one
day after the judge granted the government's motion but five days
before final judgment entered.

2It is transparently clear that the DOA staffer had no
authority to settle the claim without the approval of an
appropriate Justice Department official or, perhaps, the

4

that they never asked the district court to enforce the supposed

settlement. Rather, plaintiffs resumed their struthionine pose.

It was not until September 28, 1992 sixteen months to the day

after judgment entered that they filed a motion under Fed. R.

Civ. P. 60(b)(6).3 The court below denied the motion without

fanfare. This appeal followed.

II. ANALYSIS

District courts enjoy considerable discretion in

deciding motions brought under Civil Rule 60(b). We review such

rulings only for abuse of that wide discretion. See Teamsters,

Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v.

Superline Transp. Co., 953 F.2d 17, 19 (1st Cir. 1992);

Rodriguez-Antuna v. Chase Manhattan Bank Corp., 871 F.2d 1, 3

(1st Cir. 1989); Ojeda-Toro v. Rivera-Mendez, 853 F.2d 25, 28

(1st Cir. 1988).

In this case, plaintiffs' theory seems to be that,

because DOA's representative continued to negotiate after

judgment entered, the lower court should have excused plaintiffs'

failure to appeal or otherwise contest the dismissal. This

Secretary of Agriculture. See 28 U.S.C. 2672 (providing that

FTCA settlements in excess of $25,000 may only be effected with
the prior written approval of the Attorney General or his
designee; providing further that, apart from Justice Department
personnel, only "the head of the agency" may serve as the
Attorney General's delegee).

3Plaintiffs' motion for relief from judgment mentioned the
negotiations, but contained no substantiation for the claimed
settlement: no confirmatory correspondence, no affidavit from
the DOA official who allegedly participated in the negotiations,
no affidavit from plaintiffs' lawyer.

5

contention has a variety of flaws. Without endeavoring to cover

the waterfront, we offer four reasons why plaintiffs' theory is

unavailing. In the course of that recital, we assume the truth

of the fact-specific statements contained in plaintiffs' motion,

but do not credit "bald assertions, unsubstantiated conclusions,

periphrastic circum-locutions, or hyperbolic rodomontade."

Superline, 953 F.2d at 18.

First: Rule 60(b) seeks to balance the importance of
First:

finality against the desirability of resolving disputes on the

merits. See id. at 19. The rule's first five subsections

delineate specific grounds for relief.4 In keeping with the

4The rule states:

On motion and upon such terms as are just, the court
may relieve a party or a party's legal representative
from a final judgment, order, or proceeding for the
following reasons:

(1) mistake, inadvertence, surprise, or
excusable neglect;
(2) newly discovered evidence which by due
diligence could not have been discovered in
time to move for a new trial under Rule
59(b);
(3) fraud (whether heretofore denominated
intrinsic or extrinsic), misrepresentation,
or other misconduct of an adverse party;
(4) the judgment is void;
(5) the judgment has been satisfied,
released, or discharged, or a prior judgment
upon which it is based has been reversed or
otherwise vacated, or it is no longer
equitable that the judgment should have
prospective application, or
(6) any other reason justifying relief from
the operation of the judgment.

The motion shall be made within a reasonable time, and
for reasons (1), (2), and (3) not more than one year
after the judgment order or proceeding was entered or

6

policy that "there must be an end to litigation someday,"

Ackermann v. United States, 340 U.S. 193, 198 (1950), the rule

imposes a one-year limit on motions that invoke clauses (1)-(3).

While this limit does not apply in haec verba to clause (6) as

the rule states, motions invoking clauses (4)-(6) must only "be

made within a reasonable time" clause (6) is designed as a

catchall, and a motion thereunder is only appropriate when none

of the first five subsections pertain. See Liljeberg v. Health

Servs. Acquisition Corp., 486 U.S. 847, 863 & n.11 (1988);

Klapprott v. United States, 335 U.S. 601, 613 (1949); Lubben v.

Selective Serv. Sys. Local Bd., 453 F.2d 645, 651 (1st Cir.

1972).

Here, plaintiffs' attempt to garb their motion in the

raiment of clause (6) runs aground on the bedrock principle that

clause (6) may not be used as a vehicle for circumventing clauses

(1) through (5). The essence of plaintiffs' argument is that,

under all the circumstances, their failure to contest the

dismissal constituted understandable, ergo, excusable, neglect.

On its face, that theory falls squarely within the encincture of

Rule 60(b)(1) and, as such, plaintiffs' motion, filed more than

one year after the entry of judgment, was time-barred. See

Pioneer Inv. Servs. Co. v. Brunswick Assoc., 113 S. Ct. 1489,

1497 (1993) (explaining that, where "a party is partly to blame

for the delay," post-judgment relief "must be sought within one

taken.

Fed. R. Civ. P. 60(b).

7

year under subsection (1)").

Second: Plaintiffs' belated effort to set aside the
Second

adverse judgment also runs afoul of the admonition that Rule

60(b)(6) may not be used to escape the consequences of failure to

take a timely appeal. See Ackermann, 340 U.S. at 197-200;

Mitchell v. Hobbs, 951 F.2d 417, 420 (1st Cir. 1991); Lubben, 453

F.2d at 651; see also Ojeda-Toro, 853 F.2d at 28-29 (collecting

cases). In our adversary system of justice, each litigant

remains under an abiding duty to take the legal steps that are

necessary to protect his or her own interests. See Ackermann,

340 U.S. at 197. Thus, Rule 60(b)(6) may not be used as a back-

door substitute for an omitted appeal, and, in all but the most

exceptional circumstances, a party's neglect to prosecute a

timeous appeal will bar relief under the rule. See Ackermann,

340 U.S. at 197-202; Mitchell, 951 F.2d at 420; United States v.

Parcel of Land, Etc. (Woburn City Athletic Club, Inc.), 928 F.2d

1, 5 (1st Cir. 1991); Lubben, 453 F.2d at 651.

There are no sufficiently exceptional circumstances

here. To be sure, plaintiffs strive to show the contrary.

Citing United States v. Baus, 834 F.2d 1114 (1st Cir. 1987), they

argue that DOA acted in a Svengali-like manner, lulling them to

sleep with settlement songs while the sands of time drained and

the appeal period expired. This deception, they say, justifies

relief under Rule 60(b)(6). The district court did not agree.

Nor do we.

Baus is readily distinguishable. There, defendants

8

(the guarantors of a debt owed to a federal agency) moved, long

after the fact, for relief from a judgment entered pursuant to a

settlement agreement they had made with the United States. Id.

at 1115-16. We determined that the government had been dilatory

in performing its side of the bargain and had probably breached

its obligations under the settlement agreement. Id. at 1124-25.

We also noted that three Assistant United States Attorneys had

assured the defendants that a further judicial determination of

indebtedness was necessary before the United States could collect

on the guarantees, and that the defendants relied on these

assurances.5 Id. at 1117. In such straitened circumstances,

we ruled that the government, by virtue of a combination of

dilatory practices, disregard of contractual obligations, and

repeated assurances, had so muddied the waters that it "would

result in manifest unfairness to deny relief" under Rule

60(b)(6). Id. at 1123.

The case at bar is far removed from Baus. The

plaintiffs' Rule 60(b)(6) motion makes no claim that, but for

some misleading conduct attributable to the government,

plaintiffs would have prosecuted a timely appeal. There is

5Furthermore, the judgment in Baus entered pursuant to a

stipulation; thus, the defendants had no right of direct appeal.
After all, a party who has agreed to the entry of a judgment
without any reservation may not thereafter seek to upset the
judgment, save for lack of actual consent or a failure of subject
matter jurisdiction. See Dorse v. Armstrong World Indus., Inc.,

798 F.2d 1372, 1375 (11th Cir. 1986); 9 James W. Moore et al.,
Moore's Federal Practice 203.06 (2d ed. 1993) ("A party that

consents to entry of a judgment waives the right to appeal from
it.").

9

nothing in the present record to demonstrate that the government

stalled the processing of the claims, breached any promise, or

otherwise acted in bad faith; even in this court, plaintiffs do

not suggest that the government ever said it would waive the

exhaustion requirement or overlook the judgment's legal effect.6

There is, moreover, nothing to indicate any kind of impediment to

plaintiffs' ability to protect their legal interests in a timely

manner. Unlike in Baus, the plaintiffs instigated the

litigation. They knew the status of their claims at all stages.

They could have appealed from the entry of judgment, but did not.

And, finally, the plaintiffs appreciated the significance of the

judgment.7

Because plaintiffs advance neither an objectively

reasonable basis for not challenging the judgment in a timely

manner nor evidence indicating a pattern of affirmative action on

the government's part which would have led a reasonably prudent

6The motion papers contain no allegation either that the DOA
official who ostensibly conducted the negotiations knew about the
entry of judgment or that plaintiffs' counsel discussed that
subject with DOA personnel.

7It is beyond peradventure that plaintiffs recognized the
import of the order dismissing the case with prejudice. It was
for this very reason that plaintiffs, in their opposition to the
Rule 41 motion, argued vociferously that they should be allowed
to take a voluntary dismissal without prejudice under Rule
41(a)(1) rather than having their case dismissed with prejudice
under Rule 41(b). In support of this position, plaintiffs
claimed that negotiations were ongoing and settlement was
"imminent." Given these contemporaneous statements, it is
disingenuous of plaintiffs' counsel to suggest that the
continuation of settlement negotiations led him to forgo an
appeal, thinking that the judgment could not block the
realization of a negotiated settlement.

10

person to believe that the dismissal order was something other

than it was, Baus does not assist their cause. Rather, we think

that plaintiffs' situation is much more akin to Ackermann. After

suffering an adverse judgment in denaturalization proceedings and

failing to prosecute a timely appeal, Ackermann sought relief

under Rule 60(b)(6). 340 U.S. at 194-95. He alleged, inter

alia, that he relied upon advice from a government official who

assured him there was no need to appeal as he would ultimately be

released. See id. at 196. In affirming the denial of

Ackermann's Rule 60(b)(6) motion, the Court stated:

It is not enough for petitioner to allege
that he had confidence in [the government
official] . . . [A]nything said by [the
government official] could not be used to
relieve petitioner of his duty to take legal
steps to protect his interest in litigation
in which the United States was a party
adverse to him.

Id. at 197 (citations omitted). In language which appears

patently pertinent to the pitiful predicament of the present

plaintiffs, the Court concluded that, since Ackermann had made "a

considered choice not to appeal," he "cannot not be relieved of

such a choice because hindsight seems to indicate to him that his

decision not to appeal was probably wrong, considering the

[final] outcome." Id. at 198. So here. Even if plaintiffs

reasonably believed that DOA's representative had authority to

negotiate a settlement, this belief in no way gave them an

indeterminate carte blanche to ignore the district judge's entry

of a final judgment. See, e.g., Lubben, 453 F.2d at 652

(suggesting that, so long as the decision not to take an appeal

11

was one of unfettered choice and free will, courts should refrain

from speculating on the reasons why a laggard party did not

seasonably pursue an attack on an adverse judgment).

We will not paint the lily. "[T]o justify relief under

subsection (6), a party must show extraordinary circumstances

suggesting that the party is faultless in the delay." Pioneer,

113 S. Ct. at 1497. The instant plaintiffs do not qualify under

so rigorous a standard. Their unilateral assumption that they

could negotiate and settle their claims notwithstanding the

court's decree falls woefully short of establishing either their

own lack of fault or the kind of exceptional circumstances

necessary for relief under Rule 60(b)(6).

Third: Assuming, for argument's sake, that plaintiffs'
Third:

motion was otherwise within the rule's purview, it would

nevertheless fail on temporal grounds. We explain briefly.

A Rule 60(b)(6) motion "must be made within a

reasonable time." What is "reasonable" depends on the

circumstances. Cf., e.g., Sierra Club v. Secretary of the Army,

820 F.2d 513, 517 (1st Cir. 1987) (explaining that

"reasonableness is a mutable cloud, which is always and never the

same") (paraphrasing Emerson). Thus, a reasonable time for

purposes of Rule 60(b)(6) may be more or less than the one-year

period established for filing motions under Rule 60(b)(1)-(3).

See Planet Corp. v. Sullivan, 702 F.2d 123, 125-26 (7th Cir.

1983) ("The reasonableness requirement of Rule 60(b) applies to

all grounds; the one year limit on the first three grounds

12

enumerated merely specifies an outer boundary.").

Here, plaintiffs waited sixteen months before filing

their motion. This delay overlong in virtually any event

must be juxtaposed in this case against plaintiffs' bold

assertion that the supposed $60,000 settlement figure was agreed

upon "within two months of the entry of the order of dismissal."

Appellants' Brief at 7. If, as plaintiffs allege, they achieved

so prompt a meeting of the minds, there is no valid excuse for

having dawdled an additional fourteen months before alerting the

district court to the changed circumstances. Such protracted

delay scuttles any claim that plaintiffs' motion was "made within

a reasonable time." See, e.g., Planet Corp., 702 F.2d at 126

(holding, on particular facts, that a six-month delay in making a

Rule 60(b)(6) motion was unreasonably dilatory); Central

Operating Co. v. Utility Workers of America, AFL-CIO, 491 F.2d

245, 253 (4th Cir. 1974)(similar; four-month delay after notice

of default judgment). Having failed to move for relief from the

judgment within a reasonable time, plaintiffs' attempt to

bootstrap the alleged settlement agreement onto their

"exceptional circumstance" argument is futile.

Fourth: An additional precondition to relief under
Fourth:

Rule 60(b)(6) is that the movent make a suitable showing that he

or she has a meritorious claim or defense. See Superline, 953

F.2d at 20; Woburn City Athletic Club, 928 F.2d at 5. The

plaintiffs stumble over this hurdle. Their motion for relief

from judgment is utterly silent on the exhaustion issue and the

13

record is devoid of any indication that they, to this day, have

ever complied with the FTCA's administrative claim requirements.

Exhaustion of plaintiffs' administrative remedies is a

jurisdictional prerequisite to the prosecution of their FTCA

claims. See 28 U.S.C. 2675(a); see also Swift v. United

States, 614 F.2d 812, 814-15 (1st Cir. 1980). Thus,

notwithstanding plaintiffs' assertion that they received some

settlement offer from DOA, the district court was entitled to

conclude "that vacating the judgment [would] be an empty

exercise." Superline, 953 F.2d at 20.

III. CONCLUSION

We are not unsympathetic to plaintiffs' plight. It

appears that a young boy suffered severe injuries; that at least

one federal official believes the boy's claim should be

compensated; and that, as matters stand, plaintiffs have quite

likely been victimized by a series of blunders on their lawyer's

part (for which they may have a claim against him). But in our

adversary system, the acts and omissions of counsel are

customarily visited upon the client in a civil case, see, e.g.,

Link v. Wabash R.R., 370 U.S. 626, 632-34 (1962); United States

v. $25,721, 938 F.2d 1417, 1422 (1st Cir. 1991); Woburn City

Athletic Club, 928 F.2d at 6; United States v. 3,888 Pounds of

Atlantic Sea Scallops, 857 F.2d 46, 49 (1st Cir. 1988), and we

see no legally cognizable basis for departing from this well-

established principle here. On this poorly cultivated record, we

cannot say that the district court abused its discretion in

14

refusing to reopen the final judgment.

We do not believe, however, that the lawyer's conduct

should go unremarked. A judge has an abiding obligation to take

or initiate appropriate disciplinary measures against a lawyer

for unprofessional conduct of which the judge becomes aware. See

ABA Code of Judicial Conduct Canon 3(D)(2) (1990). We are of the

opinion that plaintiffs' counsel's handling of this matter before

the lower court raises serious questions from start to finish.

We therefore direct the district judge to review the record,

conduct such further inquiry as he may deem appropriate, and take

or initiate such disciplinary action, if any, as is meet and

proper, the circumstances considered. The clerk of the district

court shall also mail a copy of this opinion (translated into the

Spanish language if the district judge believes such translation

would be advisable) to each of the plaintiffs, at their

respective home addresses. See, e.g., Doyle v. Shubs, 905 F.2d

1, 3 (1st Cir.1990) (per curiam).

Affirmed. Remanded to the district court, with instructions, for

consideration of a collateral matter.

15