**Joseph MINER & Sylvia Miner, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 432–84T.

United States Claims Court.

May 31, 1988.

James S. Maxwell, Washington, D.C., for plaintiffs.

George L. Hastings, Jr., with whom was Asst. Atty. Gen. William S. Rose, Jr., Washington, D.C., for defendant.

## ORDER

FUTEY, Judge.

This case is before the court on defendant's motion for amendment of judgment pursuant to RUSCC 59(d) or, in the alterna-

tive, RUSCC 60(b). For the reasons stated hereinafter, defendant's motion is denied.

## BACKGROUND

The complaint was filed by plaintiffs on August 22, 1984, pursuant to 28 U.S.C. § 1491 and 26 U.S.C. § 7422, seeking a refund of federal income taxes paid in the years 1978 and 1980. Plaintiffs, filing jointly as husband and wife, paid income taxes for 1978 in the net amount of $4,768 and for 1980 in the net amount of $5,408.84. In 1982 the plaintiffs filed amended returns for the tax years 1978 and 1980, alleging that they were entitled to full refunds of the taxes paid in those two years on account of business losses sustained by the partnership of "Maxwell & Fein," in which Sylvia Miner held a 15% interest. Plaintiffs asserted that their share of the losses totalled $18,806 in 1978 and $31,494 in 1980, thus reducing their tax liability for each year to zero. Both of the amended returns, however, were disallowed by the IRS.

"Maxwell & Fein's" only business activity during 1978 and 1980 was the ownership and operation of the Scribner building at 311 West 43rd Street in New York City. At that time the building was in receivership due to a mortgage foreclosure proceeding initiated by the mortgagee, Greenwich Savings Bank, in the Supreme Court of the State of New York, New York County. *Greenwich Savings Bank v. JAJ Carpet Mart, Inc., et al.* N.Y. Index No. 18786/77. This action resulted in a "Judgment of Foreclosure and Sale" against the subject building in 1981.

In the Claims Court action the government challenged Sylvia Miner's asserted interest in the partnership and the Scribner building. The government pointed out that Miner had no documentation of her contribution of capital or property to the partnership, that she was not one of the four individuals holding record title to the Scribner property in 1978 and 1980, and that she

was not listed in any mortgage on the property as having an interest therein. Moreover, the foreclosure suit did not name Sylvia Miner as a defendant or otherwise list her as having any interest in the subject property.

The plaintiffs countered with other documentation and legal authority. They produced a series of financial statements from 1962 to 1978 prepared by "Maxwell & Fein's" C.P.A. which listed Sylvia Miner as a 15% partner and the Scribner building as a partnership asset. They also pointed out that Sylvia Miner was always listed as a 15% partner on the partnership's federal tax returns, and that Sylvia Miner has always reported a 15% distributive share of the partnership's gain or loss on her individual federal income tax returns. In addition, plaintiffs produced a sworn affidavit from one of the partners, prepared in 1985, who stated that Sylvia Miner was one of five partners who formed "Maxwell & Fein" in 1955 to purchase the Scribner building, and that she held a 15% interest in the partnership/building in the pertinent year 1978.[1] The affiants indicated that, for legal reasons, record title to the Scribner building reposed in various nominees of the partnership over the years. Thus, even though Sylvia Miner was not among the record title holders in 1978, she held an ownership interest in the building by virtue of her 15% interest in the partnership. The plaintiffs cited New York State's Partnership Law, Sections 12 and 21, as specifically sanctioning the ownership of partnership property "in the name of one or more but not all of the partners."

In the Spring of 1986 the parties negotiated a settlement of the case at bar. The agreement took the form of a "Stipulation for Entry of Judgment" and was filed with the court on May 19, 1986. It provided as follows:

It is hereby stipulated and agreed that:

---

1. The record was later supplemented with almost identical affidavits from two other partners, including Sylvia Miner, which were prepared in June 1986 in connection with the case of *Scribner Company v. Estate of Jacob A. Fine*
*and Stephen L. Fine [Executor]*, Index No. 5035–85 in the Supreme Court of New York, County of New York, consolidated with the aforementioned case of *Greenwich Savings Bank*, Index No. 18786/77.

1. To preclude any other litigation or administrative contest with respect to these issues, the defendant agrees that during 1978 and 1980 the Scribner Building was the partnership property of Maxwell & Fein et al., also known as the Scribner Company Partnership, and that Sylvia Miner was a 15 percent partner in the Partnership during those years.

2. Defendant also agrees that Sylvia Miner is entitled to deductions for the years in question, under Internal Revenue Code Section 702(a), for her 15 percent distributive share of the partnership's losses for 1978 and 1980, in the respective amounts of $18,806 and $31,494, and that the Internal Revenue Service will refund or credit Sylvia Miner's account for overpayments of taxes up to the amount of $4,427 plus statutory interest for the year 1978 and up to $5,509 plus statutory interest for the year 1980.

3. Plaintiffs waive any claim to attorney's fees, and each party is to bear its own costs.

4. The action is hereby dismissed with prejudice.

The parties respectfully request the Court to enter a Judgment approving the terms and conditions stipulated herein.

The court approved the stipulation for entry of judgment on May 29, 1986, and dismissed the complaint on May 30, 1986.

Shortly thereafter, however, on June 13, 1986, the government filed a motion for amendment of judgment pursuant to RUSCC 59(d) or, in the alternative, RUSCC 60(b). In the accompanying brief, counsel for the government asserted he had just learned that the United States had instituted a collection proceeding in the New York State case of *Scribner Co. v. Estate of Jacob A. Fine, supra,* consolidated with *Greenwich Savings Bank v. JAJ Carpet Mart, Inc., supra* (hereinafter "New York action"). The New York action involves a dispute as to certain surplus monies arising from the foreclosure sale of the Scribner building, which Scribner Co. (the partnership) claims as beneficial owner of the building prior to the sale and the Fine Estate also claims on the basis of Jacob A.

Fine's (partial) record title at the time of his death. IRS intervened in the action to protect U.S. tax interests should the Estate prevail.

The key issue in the New York action is whether the Scribner building was owned by the partnership or the individual partners holding record title. In the case at bar this issue was settled for the years 1978 and 1980 in the Stipulation for Entry of Judgment, which provided that "the defendant agrees that during 1978 and 1980 the Scribner Building was partnership property." Immediately upon the entry of judgment in this court, the government indicated that plaintiffs' counsel, whose law firm also represented Scribner Co. in the New York action, had attempted to use the stipulation to establish the partnership's ownership of the building in that action.

The government seeks to amend the judgment in this action so as to preclude its use "as a sword" by Scribner Co. on the issue of ownership in the New York action. To this end, the government asks that the opening clause of paragraph 1 of the stipulation be altered to read as follows (changes appear in brackets [ ]):

"To preclude any other litigation or administrative contest with respect to [Sylvia Miner's entitlement to deduct in other years her proportionate share of any partnership losses, and only for that purpose,] the defendant agrees...."

This wording would narrow the collateral estoppel effect of the government's agreement with respect to the ownership of the Scribner building to subsequent tax actions which might be brought by Sylvia Miner, and would make the stipulation unusable in the New York action.

Plaintiff filed a brief in opposition to defendant's motion for amendment of judgment on June 25, 1986. The government filed its reply brief on July 3, 1986.

## DISCUSSION

As reasons for settling this case with plaintiffs in 1986, the government cites such factors as the aforementioned documentation produced by the plaintiffs, the press of time as the discovery period had

expired and a trial date was approaching, a new government attorney had just been assigned to the case, and the amount in controversy was less than $10,000. Accordingly, the government expressed its willingness to grant plaintiffs the claimed tax refunds in exchange for the dropping of any claims for costs and attorney fees. The government asserts that it accepted the language in paragraph one of the stipulation to accommodate the expressed purpose of plaintiffs' counsel to preclude relitigation of the ownership issues in any future tax refund action(s), but without any information from plaintiffs' counsel as to the government's interest in the New York action or that the ownership of the Scribner building was at issue in that action. The government insists that "had defendant's counsel been aware of the [New York action], we might well have not agreed to settle this case at all, but certainly we would have limited any stipulation in the fashion set forth above." [2]

*Rule 59. New Trials; Rehearings; Amendment of Judgments; Reconsideration.*

Rule 59(d) of this court provides that "[a] motion to alter or amend the judgment shall be filed not later than 10 days after entry of the judgment." [3] As this subsection does not state the grounds on which such a motion should be granted, the government argues that those set forth in subsection (a) of Rule 59 are applicable. Rule 59(a) reads as follows:

(a) *Grounds.* (1) A new trial or rehearing or reconsideration may be granted to all or any of the parties and on all or part of the issues for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States. On a motion under this rule, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

(2) The court, at any time while a suit is pending before it, or after proceedings for review have been instituted, or within 2 years after the final disposition of the suit, may grant the United States a new trial and stay the payment of any judgment upon satisfactory evidence, cumulative or otherwise, that any *fraud, wrong, or injustice has been done the United States.* (Emphasis added.)

■ Defendant argues that an "injustice has been done the United States" in this case, so that its motion to amend the judgment is proper. Defendant's motion, however, ignores the context of the above quoted language. Rule 59(a)(2) specifies that the court, in the event of an "injustice" to the United States, "may grant the United States a *new trial.*" Thus, the court may reopen proceedings under the rule, but there is no authority thereunder for the court to unilaterally amend a judgment, as defendant requests in its motion. Therefore, the provisions in Rule 59 cited by the government provide no grounds for the relief requested. Moreover, the court is unconvinced by defendant's arguments that any "injustice has been done the United States," as will be discussed in the consideration of Rule 60(b), *infra.*

*Rule 60. Relief from Judgment or Order.*

■ Defendant argues that, even if no relief is available under Rule 59, Rule 60(b) provides an alternative basis for relief from judgment. The pertinent sections of Rule 60(b), as cited by defendant, read as follows:

(b) *Mistakes, Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; * * * (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrep-

---

**2.** Brief of the United States in Support of its Motion for Amendment of Judgment, p. 8.

**3.** Defendant met this time deadline, filing 10 work days after the entry of judgment.

resentation, or other misconduct of an adverse party; * * * or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. * * *

Case law shows that this court's Rule 60(b), and the almost identical FRCP Rule 60(b), are not lightly invoked. As the Court of Claims stated in *Kaiser Aluminum & Chemical Corp. v. United States* (concurring opinion), 187 Ct.Cl. 443 at 451, 409 F.2d 238 at 242 (1969), "Since this rule provides for extraordinary relief, the courts have uniformly held that it may be invoked only upon a showing of exceptional circumstances." *See also Hoffman v. Celebrezze* [representing the United States as Secretary of Health, Education & Welfare], 405 F.2d 833, 835 (8th Cir.1969).

Defendant argues that the attempt by plaintiffs' attorney's firm to use the stipulation in this case in the New York action was a "surprise" to defendant (within the meaning of Rule 60(b)(1)) because the Claims Court Section, Tax Division, of the Department of Justice (hereinafter "Claims Court Section") was "unaware that the United States had any interest in the distribution of the foreclosure sale proceeds."[4] Defendant can hardly contend, however, that the existence of a U.S. interest in the New York action was a tightly-held secret. The record indicates that the Claims Court Section was apprised of certain IRS claim(s) against the Estate of Jacob A. Fine in June 1985,[5] and that the Special Assistant U.S. Attorney for the Southern District of New York representing U.S. interests with respect to the above Estate and the New York action was informed of the pendency of the *Miner* case in this court in November 1985.[6] The Claims Court Section knew of the foreclosure sale and the New York action generally, and a phone call to the U.S. Attorney's office in the Southern District of New York would have sufficed to inform it of the U.S. interest in the foreclosure sale proceeds as well. In light of all the circumstances, this court views defendant's "surprise" at the attempted use of the stipulation in the New York action as a product of its own lack of prudence. Requesting amendment of the judgment on such basis has the hollow ring of an argument that it is entirely proper for the government's left hand not to know or be responsible for what its right hand is doing.

■ As another ground for relief under Rule 60(b), defendant argues that plaintiffs' attorney, and his law firm, exhibited "a lack of full candor" in the negotiations leading to the settlement by stipulation. Defendant asserts that plaintiffs' attorney, in response to a question from government counsel, indicated he had no knowledge that his clients or any other partners in "Maxwell & Fein" were being audited or involved in partnership-related tax litigation. The record contains no documentation of this exchange, however, or any other evidence of untruthful conduct by plaintiffs' attorney. That plaintiffs' attorney may not have specifically spelled out all of his reasons for negotiating the stipulation that settled this action does not rise to the level of "fraud, misrepresentation, or other misconduct" within the meaning of Rule 60(b)(3).

Defendant's complaint that "[n]one of plaintiffs' counsel's statements revealed his actual motive in seeking the stipulation"[7] cannot obscure the fact that the terms of the stipulation were freely negotiated by the parties, and approved by the highest officials in DOJ's Tax Division. The government could have hinged its assent two years ago on plaintiffs' acceptance of the restrictive language now proffered to this court. Defendant failed to craft the stipulation in this manner, however, and

---

4. Motion for Amendment of Judgment, p. 6.

5. Deposition of Stephen Fine, taken by James Annelli, Claims Court Section attorney, on June 3, 1985, pp. 16–17.

6. Affidavit of Eric S. Maxwell, dated June 19, 1986, p. 2.

7. Reply Brief for the United States in Support of its Motion for Amendment of Judgment, p. 9.

defendant must bear the consequences of this omission. *See generally, Hoffman v. Celebrezze, supra,* 405 F.2d at 835.

Another factor militating against defendant's motion is the evidence that plaintiffs were fully prepared to go to trial to establish, *inter alia,* the partnership's ownership of the Scribner property.[8] If this court were to amend the judgment in the manner requested by defendant, plaintiffs would be denied their "day in court" to litigate the ownership issue. This court will not act to deny plaintiffs both the fruits of the stipulation and the opportunity to go to trial in this forum and obtain a formal judgment on the merits. Nor does the court see any merit in relieving defendant of the terms of the stipulation and restoring the parties to their positions prior to entry of judgment. As previously discussed, defendant freely negotiated the terms of the stipulation, and the court finds no "injustice" to defendant in plaintiffs' attempted use thereof in another proceeding. *See generally, Morse Boulger Destructor Co. v. Camden Fibre Mills,* 239 F.2d 382, 383 (3rd Cir.1956); *Greenspahn v. Joseph E. Seagram & Sons, Inc.,* 186 F.2d 616, 620–21 (2d Cir.1951).

Defendant's final argument is that "a genuine issue as to the [Scribner] building's ownership may exist, so that the Government should be entitled to have the partnership put to its proof in the New York litigation, rather than have the judgment obtained in dubious fashion in this case be utilized to determine any factual issue in that litigation."[9] This court has held that stipulations "can be disregarded where substantial evidence to the contrary is found on the record." *Exxon Corp. v. United States,* 12 Cl.Ct. 434 at 439 (1987). In the case at bar, however, the court finds no such "substantial evidence" that the ownership of the Scribner building in 1978 and 1980 was other than that set forth in the stipulation. The record contains significant documentary evidence (cited on page 771 of this Order) of the partnership's ownership of the building and Sylvia Miner's 15% interest in the partnership. The government obviously considered the evidence compelling enough to settle this case in 1986, and the court will not tamper with the terms of that settlement now.

After thorough review of the record, and for the reasons discussed hereinabove, the court finds no "exceptional circumstances" in this case warranting an amendment of the judgment based on Rule 60(b). *Kaiser Aluminum & Chemical Corp. v. United States, supra,* 187 Ct.Cl. at 451, 409 F.2d at 242.

## CONCLUSION

Accordingly, defendant's motion for amendment of judgment pursuant to RUSCC 59(d) or 60(b) is hereby denied.

IT IS SO ORDERED.

---

8. *See,* in particular, *Transcript* of status conference held on April 17, 1986, pp. 7, 8, 9.

9. Defendant's Reply Brief, p. 13.