SOLITRON DEVICES, INC., Plaintiff,

v.

The UNITED STATES of America, Defendant.

No. 133–75.

United States Claims Court.

March 29, 1989.

**562**

Kenneth A. Marra, West Palm Beach, Fla., for plaintiff.

Terry L. Coles, Washington, D.C., with whom was Acting Asst. Atty. Gen., James I.K. Knapp, for defendant.

## OPINION

RADER, Judge.

In 1975, the United States Renegotiation Board (Board) determined that Solitron Devices, Inc. (Solitron), had received $3,950,-000 in excess profits from 1967 to 1970. Later that year, Solitron requested this court's predecessor to reexamine the excessive profits. This litigation ended in 1984 with a stipulation agreement. The parties agreed that Solitron would pay the United States $1,000,000 to cure the 1970 excesses. The parties agreed that Solitron would forfeit this amount without reduction for any tax credits.

Nonetheless plaintiff sought tax credits on the forfeiture payment. The United States Court of Appeals for the Eleventh Circuit recently denied plaintiff's refund claim. *Solitron Devices, Inc. v. United*

*States,* 862 F.2d 846 (11th Cir.1989). As "one of its few remaining options," Pl. Motion filed July 29, 1988, at 5, plaintiff now petitions this court under RUSCC 60(b) for relief from the 1984 stipulation agreement. Plaintiff contends that it did not intend to waive entitlement to tax credits in the 1984 agreement and, therefore, seeks to reopen the 1975 action. Although asking to reopen the 1975 excess profits suit, plaintiff, in fact, seeks a refund of taxes.[1]

Plaintiff has now litigated issues relative to its 1970 tax year in the United States Court of Claims, the United States Tax Court, the United States District Court for the Southern District of Florida, the Eleventh Circuit (twice), and now again in the United States Claims Court. For reasons explained below, this court denies plaintiff's motion.

## FACTS

On January 21, 1975, the Board determined that Solitron had received $3,950,000 in excessive profits from government contracts for the years 1967, 1968, 1969, and 1970. These excesses were subject to forfeiture. Renegotiation Act of 1951, 26 U.S.C. § 1471 (repealed 1976). On April 23, 1975, Solitron petitioned this court's predecessor to reconsider the Board's ruling.

In 1978, while the Court of Claims case was pending, the Internal Revenue Service (IRS) disallowed plaintiff's net loss carryback for the 1970 tax year. IRS assessed a $981,762 deficiency against plaintiff. Plaintiff petitioned the Tax Court to reconsider the deficiency. On January 10, 1983, the Tax Court upheld the deficiency. *Solitron Devices, Inc. v. Commissioner,* 80 T.C. 1 (1983). On appeal, the Eleventh Circuit affirmed the Tax Court's decision. *Solitron Devices, Inc. v. Commissioner,* 744 F.2d 95 (11th Cir.1984). Plaintiff paid the $981,762 assessment.

During the pendency of plaintiff's appeal to the Eleventh Circuit, Solitron and the United States, on September 28, 1984, entered into a stipulation agreement to close

---

1. Plaintiff repeatedly requests in its motion a "refund of taxes to which it is statutorily enti-

tled pursuant to I.R.C. § 1481(b)." Pl. Motion filed July 29, 1988, at 1, 5, 8.

the lawsuit before the Claims Court. Based on that agreement, the Claims Court entered an order determining excessive profits for Solitron's 1970 tax year to be $600,000. The agreement set interest on that amount at $400,000.

On October 1, 1984, the Claims Court entered an order adopting the terms of the stipulation. The subsequent order for judgment states:

Pursuant to the order determining excessive profits of October 1, 1984,

IT IS ORDERED AND DETERMINED this date, pursuant to Rule 58, that plaintiff realized excessive profits in the amount of $600,000 from contracts subject to the Renegotiation Act of 1951, as amended, during its fiscal year ended February 28, 1970; that the interest accrued on the said amount of excessive profits is $400,000; and that as a result of this redetermination the United States is due the total amount of $1,000,000 in excessive profits and accrued interest; *that the total payments so due the United States shall be made without reduction for any credits or deductions allowable under Section 1481(b) of the Internal Revenue Code and by the Renegotiation Act of 1951, if any such credits or deductions exist;* and that, upon full satisfaction of the debts created by the said redetermination (including accrued interest), all other claims set forth in plaintiff's petition and defendant's counterclaim are merged into this order.

Judgment filed Oct. 10, 1984, at 1 (emphasis added). On October 10, 1984, Solitron forfeited $1,000,000 to the United States in compliance with this order.

Shortly thereafter, plaintiff filed an amended return for 1970. The amended return claimed tax credits on the forfeiture payment in the amount of $314,473. On August 7, 1986, IRS denied this claim. IRS determined that the stipulation agreement was a "final settlement with the United States of all matters, credits or refunds included." As a result, Solitron filed a refund action in the Southern District of Florida challenging the IRS denial.

In the district court, the United States successfully argued that § 6512(a) of the Internal Revenue Code (I.R.C.), 26 U.S.C. § 6512(a) (1982 & Supp. IV 1986), barred plaintiff's claim for a refund. Section 6512 states that a plaintiff, having petitioned the Tax Court for a given tax year, may not entertain a tax suit in any other court for that same tax year. The Eleventh Circuit affirmed the district court's decision to dismiss for lack of jurisdiction. *Solitron Devices*, 862 F.2d at 846.

Plaintiff alleges that the language of the 1984 judgment order permits it to receive tax credits on the forfeiture payment. Plaintiff contends that only after the Eleventh Circuit denied the net loss carryback claim (in late 1984) could it calculate 1970 tax credits. Therefore, plaintiff seeks to use RUSCC 60(b)(6) to enforce its perception of the meaning of the 1984 stipulation agreement.

Defendant argues that plaintiff fails to satisfy the requirements for a successful RUSCC 60(b) motion. Further, defendant contends that this court lacks jurisdiction for the same reason that the Southern District of Florida lacked jurisdiction—plaintiff has already litigated its 1970 taxable year in the Tax Court. Finally, defendant reads the language of the stipulation agreement as a waiver of all 1970 tax credits.

This court must resolve the following issues: (1) Has the plaintiff met the standard for relief from judgment set by RUSCC 60(b)(6); and (2) does this court have jurisdiction to render the requested relief?

## DISCUSSION

RUSCC 60(b) sets forth six grounds for relief from judgment. The first five clauses enable the Claims Court to relieve a party from a judgment in a variety of specific circumstances, including mistake, newly discovered evidence, and fraud. The facts of this case do not fall within any of

these clauses.[2] The sixth and final clause authorizes relief "[for] any other reason justifying relief from the operation of the judgment." RUSCC 60(b)(6).

In *Klapprott v. United States*, 335 U.S. 601, 615, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949), the Supreme Court stated that this residual clause enables courts "to vacate judgments whenever such action is appropriate to accomplish justice." The movant in *Klapprott* was ill, penniless, and incarcerated at the time of the trial. The criminal charges which kept the petitioner in jail for over four years were later overturned by court action. Meantime, petitioner was unable to appear and present a defense in denaturalization proceedings. Federal courts have noted that the broad injunction "to accomplish justice" is particularly applicable to the extraordinary situation presented by the movant in *Klapprott*. *E.G., Von Wedel v. McGrath*, 100 F.Supp. 434, 436, (D.N.J.) *aff'd*, 194 F.2d 1013 (3d Cir.1952); J. Moore, J. Lucas, *Moore's Federal Practice* ¶ 60.27, at 60–266 (2d ed. 1987).

A year later, the Supreme Court considered the residual clause in another immigration case and denied relief. *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950). In the absence of the extraordinary circumstances presented by *Klapprott*, the Court stated that there "must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Id.* 340 U.S. at 198, 71 S.Ct. at 211. The *Ackermann* movants received a trial, but failed to timely appeal due to financial inabilities and reliance upon advice of a government official.

Thus, the residual clause of RUSCC 60(b) requires a court to strike "a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of *all* the facts.'" *Primbs v. United States*, 4 Cl.Ct. 366, 368 (1984) (*quoting Seven Elves v. Eskenazi*, 635 F.2d 396, 401 (5th Cir.1981)); *aff'd*, 765 F.2d 159 (Fed. Cir.), *cert. denied*, 471 U.S. 1068, 105 S.Ct. 2147, 85 L.Ed.2d 503 (1985).

### Standards for RUSCC 60(b)(6) Relief: Exceptional Circumstances

▇ In light of the extraordinary nature of the relief provided by RUSCC 60(b), a litigant must show exceptional circumstances to justify invocation of the rule. *Ackermann*, 340 U.S. at 202, 71 S.Ct. at 213; *Griffin v. Swim–Tech Co.*, 722 F.2d 677, 680 (11th Cir.1984); *House v. Secretary of HHS*, 688 F.2d 7, 9 (2d Cir.1982). The United States Claims Court has recently reiterated the same rule:

> Case law shows that this court's Rule 60(b) ... [is] not lightly invoked. As the Court of Claims stated in *Kaiser Aluminum & Chemical Corp. v. United States*, (concurring opinion) 187 Ct.Cl. 443 at 451, 409 F.2d 238 at 242 (1969), "[s]ince the rule provides for extraordinary relief, the courts have uniformly held that it may be invoked only upon a showing of exceptional circumstances."

*Miner v. United States*, 14 Cl.Ct. 770, 774 (1988).

▇ In this instance, plaintiff does not present exceptional circumstances. Rather, plaintiff made several "free, calculated, and deliberate choices." *Ackermann*, 340 U.S. at 198, 71 S.Ct. at 212. These choices, rather than exceptional hardships, created the circumstance from which plaintiff seeks relief.

In the first place, plaintiff voluntarily entered the stipulation agreement on September 28, 1984, from which it now seeks relief. The agreement expressly provides that plaintiff would pay $1,000,000 "with-

---

**2.** During argument on November 3, 1988, plaintiff stated its intention to proceed under RUSCC 60(b)(6):

> The Court: [RUSCC 60(b) ] has six possible justifications for the court to grant ... relief.... As I read your motion, I didn't detect which of the six you invoked.

> Mr. Marra: Well, Your Honor, I would think we're proceeding under sub-section of paragraph six of that rule, basically which reads "for any other reason justifying relief"....

Transcript of Proceedings, No. 133–75T, filed Dec. 6, 1988, at 4.

out reduction for any credits or deductions allowable under 26 U.S.C. Section 1481(b), if any such credits or deductions exist." With this language, plaintiff waived eligibility for tax credits when making the required forfeiture payment.

Plaintiff contends that this language was not a permanent waiver of eligibility for tax credits. At the time of this 1984 stipulation agreement, plaintiff's claim for a net loss carryback in taxable year 1970 was on appeal from the Tax Court. Therefore, plaintiff contends that it was "unable to calculate the credit until ... the tax court appeal ... [was] finalized." Pl. Motion filed July 29, 1988, at 6. Plaintiff argues that the language of the agreement does not prevent it from seeking tax credits when calculation became possible.

Defendant, on the other hand, understands the stipulation to waive permanently any reductions in the $1,000,000 payment. Defendant "would have rejected the [stipulation agreement] offer if it had understood that plaintiff was entitled to reduce [the $1,000,000 payment] by $314,-473." Def. Brief filed Oct. 21, 1988, at 7.

The stipulation language establishes that plaintiff waived the tax credits at the time of its $1,000,000 forfeiture. The 1984 agreement includes language that considers the pending Tax Court appeal and still denies plaintiff any credit. The final words of the waiver clause are "if any such credits or deductions exist." Due to the Tax Court appeal, the existence and amount of any credits or deductions were tentative at the time of the agreement. Nonetheless, plaintiff had agreed that its forfeiture payment would not be reduced by the amount of any tentative credits. The words "if any such credits or deductions exist" are broad enough to cover the pending Tax Court appeal. Plaintiff voluntarily waived its present and future eligibility for tax credits by entering into the 1984 agreement.

In effect, plaintiff asks this court to restructure the 1984 agreement or to relieve plaintiff of its effects. Plaintiff, however, failed to condition its assent to the 1984 agreement on the Government's agreement to grant tax credits after the conclusion of the Tax Court appeal. In *Miner*, the Claims Court denied the Government's 60(b)(6) motion to reopen a stipulation agreement because it did not "hinge its assent two years ago on plaintiff's acceptance of the restrictive language now proffered to this court." 14 Cl.Ct. at 774. Plaintiff could have drafted the 1984 agreement to clarify its intent to claim tax credits after the Tax court appeal. This court finds no exceptional reasons to do for plaintiff in 1989 what plaintiff failed to do for itself in 1984.

Plaintiff made still other "free, calculated, and deliberate choices" that prevent this court from affording relief under RUSCC 60(b)(6). While this court's predecessor was adjudicating the case plaintiff now seeks to reopen, plaintiff was litigating its 1970 taxable year in the Tax Court. At any time until the Tax Court's decision on January 10, 1983, plaintiff could have asked the Tax Court to defer its decision until the Claims Court concluded the excess profits case. Alternatively, plaintiff could have moved the Tax Court to reconsider its findings of fact or to revisit its decision in light of the Claims Court's 1984 order. Finally, plaintiff could also have requested the Eleventh Circuit to remand its case to the Tax Court upon entry of the Claims Court order on October 1, 1984.[3] The Eleventh Circuit's decision issued on December 5, 1984. Each of these actions would have given plaintiff an opportunity to litigate its eligibility for tax credits before the Tax Court, the forum with proper jurisdiction over this claim, as discussed in another section of this opinion. Plaintiff elected not to seek Tax Court review. Therefore, this court cannot find any exceptional reason to grant relief under RUSCC 60(b)(6).

Throughout proceedings in five separate federal courts relating to its 1970 taxable year, plaintiff has been represented by counsel. Plaintiff voluntarily entered into agreement and elected litigation strategies that now leave it with "few remaining op-

---

**3.** Plaintiff knew before Oct. 1, 1984 of the impending close of Claims Court litigation. Plain-

tiff initiated the negotiations which resulted in the September 28, 1984 stipulation agreement.

tions." Pl. Motion filed July 29, 1988, at 5. Plaintiff's predicament, however, is unlike the circumstances in *Klapprott.* The *Klapprott* movant, due to extraordinary circumstances far beyond his control, did not have any reasonable opportunity to present a defense. Plaintiff, a well-represented corporation, entered a stipulation agreement affecting its entitlement to tax credits. Moreover, plaintiff repeatedly litigated its 1970 tax year in several courts. Plaintiff's failure to raise the issue of 1970 tax credits was a product of its choices to pursue relief in different courts at different times.

Plaintiff presents fewer extenuating circumstances than *Ackermann,* where the Supreme Court denied a motion to reopen judgment. In *Ackermann,* a foreign-born family "less familiar with our customs," chose to forego a denaturalization appeal in reliance upon advice from an immigration official. 340 U.S. at 204, 71 S.Ct. at 214. (Black J., dissenting). Plaintiff does not show exceptional circumstances or hardships warranting RUSCC 60(b)(6) relief.

### *Standards for RUSCC 60(b)(6) Relief: Timeliness*

A motion under RUSCC 60(b)(6) must be "made within a reasonable time." On August 7, 1986, the IRS denied Solitron's claim for 1970 tax credits. From that point forward, plaintiff had every reason to understand that IRS interpreted the stipulation agreement to bar tax credits. Nonetheless, plaintiff waited one week shy of two years before petitioning this court to reopen the 1975 case. Plaintiff explains that it chose to seek relief first in the Southern District of Florida. Upon review of "the specific circumstances of the case," federal courts have permitted delays in

"extraordinary cases in which the unusual circumstances justify a party's delay." *United States v. Berenguer,* 821 F.2d 19, 21 (1st Cir.1987). Plaintiff, however, does not contend that duress prevented earlier filing, *see, e.g., Klapprott,* 335 U.S. at 615, 69 S.Ct. at 398; *United States v. Karahalias,* 205 F.2d 331 (2d Cir.1953); that lack of notice prevented earlier filing, *see, e.g., Radack v. Norwegian Am. Line Agency, Inc.,* 318 F.2d 538 (2d Cir.1963); that misconduct of counsel prevented earlier filing, *see, e.g., Barber v. Turberville,* 218 F.2d 34 (D.C. Cir.1954); that illness, poverty and other hardships prevented earlier filing, *see, e.g., Klapprott,* 335 U.S. at 615, 69 S.Ct. at 390; *United States v. Williams,* 109 F.Supp. 456 (W.D.Ark.1952); or that misrepresentations and wrongful delays by the Government prevented earlier filing, *see, e.g., United States v. Baus,* 834 F.2d 1114, 1121–23 (1st Cir.1987).[4]

Reasonableness depends on the facts of each case. *United States v. Holtzman,* 762 F.2d 720 (9th Cir.1985). The movant must, however, show that unusual circumstances warranted the delay. *Ackermann,* 340 U.S. at 193, 71 S.Ct. at 209. In *White Mountain Apache Tribe of Arizona v. United States,* 4 Cl.Ct. 575, 580 (1984), the Claims Court found a two-month delay unreasonable, while in *Primbs,* the Claims Court held a two-month delay reasonable.

The circumstances of this case cannot support a finding that plaintiff filed a timely motion under RUSCC 60(b)(6). If plaintiff considered that it had a sound case for relief from judgment, it could have sought relief in the Claims Court at the same time or before seeking relief in the Southern District of Florida. Instead, plaintiff waited for nearly two years. Although a two-year delay is not necessarily unreasonable,

---

**4.** Plaintiff relies upon *Baus* for the proposition that a "Rule 60(b)(6) motion was timely even though filed seven years after entry of judgment." Pl. Brief filed Nov. 14, 1988, at 5–6. In *Baus,* however, the First Circuit held:

It would result in manifest unfairness to deny relief to the guarantors on account of their failure to seek Rule 60(b)(6) relief prior to the government's 1985 collection effort, when: (1) the government lulled the guarantors into delaying through its promises, (2) the govern-

ment itself delayed two years in holding a foreclosure sale and another five years in demanding payment, and (3) the government apparently breached its obligations under the settlement agreement.

834 F.2d at 1123. Thus *Baus* stands for the principle that the Government may not invoke 60(b)'s time limits when the delays were a result of wrongful conduct by the Government. In this case, defendant is not responsible for any delay.

it becomes unreasonable when not accompanied by unusual circumstances or some other reasonable explanation. Plaintiff's only explanation is a preference to seek relief in another forum. This election is hardly unusual.

During the many months of district court litigation, plaintiff could have put this court on notice about a possible problem with the stipulation. Plaintiff did not file its motion until after the Florida District Court affirmed the IRS.[5] Certainly, Solitron had frequent occasion to review the record and to realize that a motion to this court would have been proper. Plaintiff's explanation for the two-year delay is not sufficient to make its filing timely. In light of the circumstances of this case, plaintiff's two-year delay is not reasonable.

### Jurisdiction

■ Even if Solitron showed exceptional circumstances and a timely filing, this court still lacks jurisdiction to grant the relief requested. Plaintiff asks to reopen this 1975 case "so that it may seek a refund of taxes." *See supra* note 1 and accompanying text. Plaintiff, however, has already litigated its 1970 tax liability before the Tax Court. Therefore, I.R.C. § 6512(a) deprives this court of jurisdiction to grant the relief sought by plaintiff. I.R.C. § 6512(a) provides in pertinent part:

(a) **Effect of petition to Tax Court.**— If the Secretary or his delegate has mailed to the taxpayer a notice of deficiency under section 6212(a) (relating to deficiencies of income, estate, and gift taxes) and if the taxpayer filed a petition with the Tax Court within the time prescribed in section 6213(a), no credit or refund of income tax for the same taxable year ... shall be allowed or made and no suit by the taxpayer for the recovery of any part of the tax shall be instituted in any court....

Thus, the Code prevents a taxpayer from instituting any action in "any court" after

litigating that year in Tax Court. The Claims Court has stated:

[T]he Tax Court's jurisdiction, once it attaches, extends to the *entire subject of the correct tax for the particular year.* The cause of action then before the [Tax] Court encompass[es] all phases of the taxpayer's income tax for [the year in question]....

*Prizer v. United States,* 11 Cl.Ct. 184, 187 (1986) (quoting *Erickson v. United States,* 159 Ct.Cl. 202, 216, 309 F.2d 760, 767–68 (1962)) (emphasis in original); *see also United States v. Rochelle,* 363 F.2d 225, 231 (5th Cir.1966).

This principle remains in effect where circumstances prevented the taxpayer from raising an issue during the earlier Tax Court proceeding. *Solitron Devices,* 862 F.2d at 849. The Eleventh Circuit relied upon the jurisdictional bar of I.R.C. § 6512(a) to dismiss plaintiff's claim for tax credits before the district court. During the Eleventh Circuit appeal, plaintiff argued that it could not raise its claim for tax credits at the time of the prior Tax Court action. Based on the same facts presented in this motion[6], the Eleventh Circuit "was unpersuaded" by plaintiff's argument. *Id.*

Similarly, the Court of Claims considered and refused this argument:

That [earlier Tax Court] decision bars further litigation not only on those [issues] ... which were actually raised but also on the issues which could have been raised.

*Erickson,* 159 Ct.Cl. at 216, 309 F.2d at 768. As stated earlier, plaintiff could have raised the tax credit issues before the Tax Court, but chose a different litigation strategy. Plaintiff could have requested the Tax Court to defer its decision until conclusion of the excess profits litigation before the Claims Court. Alternatively, plaintiff could have petitioned the Tax Court to reconsider its decision after the conclusion of the Claims Court case. Finally, plaintiff

---

5. Interestingly, Solitron neglects to address why it did not wait for the Eleventh Circuit to decide the district court appeal.

6. The Eleventh Circuit based its decision on jurisdictional grounds. *Solitron Devices,* 862 F.2d at 849. Otherwise that decision would operate as *res judicata* with respect to this motion.

**568**

could have asked the Eleventh Circuit, before its appeal was final on December 5, 1984, to remand to the Tax Court for consideration of the Claims Court settlement. After noting each of these opportunities, the Eleventh Circuit concluded: "Solitron could have taken a number of steps instead of seeking redress from a court without jurisdiction over the matter." *Solitron Devices,* 862 F.2d at 849.

As determined by the Eleventh Circuit, plaintiff could have brought the tax credit issue before the Tax Court. Due to I.R.C. § 6512(a), this court, like the Florida District Court, lacks jurisdiction to grant the relief requested.

CONCLUSION

The Supreme Court stated that "there must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Ackermann,* 340 U.S. at 198, 71 S.Ct. at 2. Plaintiff made voluntary choices to enter into a stipulation and to pursue litigation strategies that foreclose this court from granting this motion.

Plaintiff did not set forth exceptional circumstances justifying the extraordinary relief of RUSCC 60(b)(6). Even if it had shown such circumstances, plaintiff's motion is untimely. Plaintiff did not show unusual circumstances justifying a two-year delay before filing the motion. In any event, I.R.C. § 6512(a) deprives this court of jurisdiction to grant the relief sought by the plaintiff. Accordingly, this court denies plaintiff's motion requesting relief from judgment.

IT IS SO ORDERED.